**Frank E. MOTT and Mary R. Williams, Executors of the Last Will and Testament of Walter C. Teagle**

**v.**

**The UNITED STATES.**

**No. 390–69.**

United States Court of Claims.

July 14, 1972.

Edward A. Vrooman, New York City, for plaintiffs. Harry F. Weyher, New York City, attorney of record.

Allan C. Lewis, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, DUR-FEE, Senior Judge, and DAVIS, SKEL-TON, NICHOLS, KASHIWA and KUN-ZIG, Judges.

ON PLAINTIFFS' MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge:*

This tax case, apparently one of first impression, comes before the court on the parties' cross-motions for summary judgment. The issue is whether an estate is entitled to a deduction from its gross income, pursuant to Section 661(a) (2) of the Internal Revenue Code of 1954,[1] when it makes a distribution of corpus of an estate to a qualified charitable beneficiary pursuant to a general pecuniary bequest. We have con-cluded that the claimed deduction is not available.

The pertinent facts, which have been stipulated, are as follows: Walter C. Teagle died on January 9, 1962, leaving a gross estate in excess of $36,000,000. Under the terms of his will, two-thirds of the estate, after payment of debts, expenses, and specific bequests, was left to the Teagle Foundation, a tax-exempt charitable corporation. The residue of the estate, including all income earned during its administration, was left in trust for the benefit of Jane W. Teagle, an alternate life beneficiary, with specified remainders over.

The years involved in this suit are the estate's taxable years ending July 31, 1963, 1964, and 1965. During this period, the executors of the estate made the following payments out of the corpus of the estate in partial satisfaction of the bequest to the Teagle Foundation:

| | |
|---|---|
| 1963 | $13,165,575.75 |
| 1964 | 405,379.02 |
| 1965 | 375,000.00 |

The executors also made several distributions of income to Jane during the administration period before the trust came into operation, including during the years involved here, a $100,000 payment in 1963.

In computing Mr. Teagle's taxable estate, the executors were allowed an estate tax deduction of $14,107,420.90 for the charitable bequest to the Teagle Foundation. They now assert that they are also entitled to a deduction, in computing the estate's taxable income for the years involved here, for the payments described above which they made in satisfaction of the charitable bequest. Briefly stated, they contend that such a deduction is permitted by the plain terms of Section 661(a) (2), which provides in pertinent part that:

In any taxable year there shall be allowed as a deduction in computing

---

* This opinion contains all the essential facts as stipulated by the parties.

1. See appendix for the provisions of Section 661 and other provisions of the Code referred to in this opinion.

the taxable income of an estate * * * any * * * amounts properly paid * * * for such taxable year * * *.

The Government, while conceding that a literal reading of Section 661(a) (2) would permit plaintiffs to prevail, maintains that that section cannot properly be interpreted without reference to its purpose, and that when the provision is read in the context of the entire statutory scheme of Subchapter J of Chapter 1 of the Code, it is clear that the distribution to the charitable organization in this case cannot qualify for the deduction permitted by Section 661(a) (2).

■ Before reaching the merits of this case, we think it is important to summarize briefly some of the basic principles of Subchapter J which relate to distributions by estates. Since the enactment of the Revenue Act of 1913,[2] the value of "property acquired by gift, bequest, devise or inheritance"[3] has been excluded from gross income. The exclusion is not absolute, however, since income from such property, including income realized by an estate during its administration,[4] is subject to tax.[5] Similarly, a bequest of *income* from property is not within the statutory exclusion.[6] It has therefore become necessary to develop a system of rules which would determine the proper amounts of estate income subject to tax and, more importantly for purposes of this case, a system which would determine who should bear the burden of that tax. In making this latter determination, Congress has adopted the "conduit principle" of taxing estates (and trusts as well), through which an estate is treated as a taxable entity and is taxed, in general, on income which it realizes but which it does not distribute, or is not deemed to have distributed, to its beneficiaries. Where income is distributed to a beneficiary, or is deemed to be so distributed, that income would not be taxable to the estate but instead would be taxable to the beneficiary, a result which is accomplished by permitting the estate a deduction for the amount of the distribution and by requiring the beneficiary to include that amount in his gross income. In this manner, the conduit principle serves to effectuate a Congressional policy to tax estate income once, and only once, by allocating the tax between estate and beneficiary.[7]

■ Under the present rules of Subchapter J, the allocation described above is accomplished through the combined operation of the concept of "distributable net income," or "D. N. I.," and the statutory distribution rules applicable to estates and complex trusts, which are set out in Sections 661–63. With regard to distributable net income, we limit our discussion here to only a few salient aspects of that concept, since we previously examined it in detail in Manufacturers Hanover Trust Co. v. United States, 312 F.2d 785, 160 Ct.Cl. 582, cert. denied, 375 U.S. 880, 84 S.Ct. 150, 11 L. Ed.2d 111 (1963). What is important to note here is that D. N. I., which is essentially the estate's taxable income (with some modifications), serves generally as a ceiling on the combined tax liability of the estate and beneficiary, and limits the amount taxable to the beneficiary and deductible by the estate.

In addition, we should also note that D. N. I. is expressed in terms of *taxable* income, and that in computing taxable income Section 642(c), in general, allows an estate (or trust) an unlimited chari-

2. Revenue Act of 1913 § IIB, 38 Stat. 114.

3. Int.Rev.Code of 1954, § 102(a).

4. *See* id., § 641(a).

5. *Id.*, § 102(b) (1); cf., Revenue Act of 1916 § 4, 39 Stat. 756.

6. Int.Rev.Code of 1954, § 102(b) (2); cf., Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 69 L.Ed. 897 (1925).

7. *See generally* Holland, Kennedy, Surrey & Warren, A Proposed Revision of the Federal Income Tax Treatment of Trusts and Estates—American Law Institute Draft, 53 Colum.L.Rev. 316, 318 (1953); 6 Mertens, Law of Federal Income Taxation § 36.01 (rev. ed. 1968); Ferguson, Freeland & Stephens, Federal Income Taxation of Estates and Beneficiaries 382 et seq. (1970).

table deduction for amounts of "gross income" which, pursuant to the governing instrument, is paid, permanently set aside, or to be used for charitable purposes. Thus, a charitable distribution which is deductible under Section 642(c) has the effect of reducing the maximum aggregate amount taxable to the estate and beneficiary because it reduces D. N. I.[8]

The distribution rules of Sections 661–63 provide the mechanism for allocating D. N. I. between estate and beneficiary. Since frequently an estate makes distributions to more than one beneficiary during a particular taxable year, and since some beneficiaries have greater rights to income than do others, the distribution rules provide for priorities of taxability by establishing what is known as the "tier system." Through this system, D. N. I. is allocated under Section 662(a) (1) first to beneficiaries who have rights to current income, based upon a conclusive presumption that "any distribution is considered a distribution of the trust or estate's current income to the extent of its taxable income for the year." [9] By presuming that such distributions are income, Subchapter J eliminates the need for "tracing" the source of distributions, as was necessary under prior law, to determine what portion, if any, constitutes amounts of current income.[10]

After allocating D. N. I. among the "first-tier" beneficiaries described above, any D. N. I. remaining would be allocated among "second-tier" beneficiaries according to Section 662(a) (2). Theoretically, all distributions except first-tier distributions fall within the second tier, which is defined as "all other amounts properly paid, credited, or required to be distributed to such bene-

ficiary for the taxable year." The term "amounts," which is central to the controversy here, is broad enough to encompass non-first-tier distributions from either principal or income, whether of money or specific property. Again, this eliminates the necessity for tracing, since the statute assumes that second-tier distributions diminish whatever D. N. I. remains after allocations to first-tier distributees.

By defining second-tier distributions as any "amounts," the sweep of Section 662(a) (2) is so broad that, if left unqualified, bequests excluded under Section 102(a) could become taxable to beneficiaries under Section 662. To preserve the exemption for bequests, Section 663(a) (1) excludes from the operation of the distribution rules any amount which is not payable solely out of income and "which, under the terms of the governing instrument, is properly paid or credited as a gift or bequest of a specific sum of money or of specific property and which is paid or credited all at once or in not more than 3 installments." If a distribution meets these requirements it will be considered a bequest excluded under Section 102(a). If it fails to meet them, it will be considered a bequest of income from property under Section 102(b) (2),[11] and will be taxed according to the distribution rules. Of course, the amount taxable under the distribution rules is circumscribed by the estate's D. N. I., so that amounts distributed in excess of D. N. I. would still be considered as a bequest excluded under Section 102(a), whether or not the distribution meets the specific requirements of Section 663(a) (1).[12]

A second modification to the distribution rules which is pertinent to this case is contained in Section 663(a) (2). It

---

8. However, first-tier beneficiaries are taxed under Section 662(a) (1) up to the estate's D.N.I. undiminished by the deduction provided in Section 642(c).

9. S.Rep.No.1622, 83d Cong., 2d Sess. 349 (1954), U.S.Code Cong. & Admin.News, p. 4990.

10. Id., *see* Int.Rev.Code of 1939, § 162(b).

11. *See* Int.Rev.Code of 1954, § 102 (last sentence); Treas.Reg. § 1.102–1(d) (1956).

12. It should be noted that the "throwback rules" of Section 665–69 do not apply to estates. Thus, current D.N.I. is the maximum taxable amount.

provides that "amounts" do not include "[a]ny amount paid or permanently set aside or otherwise qualifying for the [charitable] deduction provided in section 642(c) * * *." The purpose of this provision, as explained by the committee reports, is that "since the estate or trust is allowed a deduction under Section 642(c) for amounts paid, permanently set aside, or otherwise qualifying for the deduction provided in that section, such amounts are not allowed as an additional deduction for distributions, nor are they treated as amounts distributed for purposes of Section 662 in determining the amounts includible in gross income of the beneficiaries." [13]

As mentioned above, amounts distributed which are includible in the gross income of a beneficiary would, in general, not be taxable to the estate. This is accomplished by Section 661, which provides for a deduction, up to the estate's distributable net income, for amounts distributed to its beneficiaries. The language and framework of this section corresponds to that of Section 662. An estate can deduct amounts "required to be distributed currently" (first-tier distributions) under Section 661(a)(1), as well as "any other amounts properly paid or credited or required to be distributed" (second-tier distributions) under Section 661(a)(2).

The foregoing discussion of the distribution scheme of Subchapter J, although considerably simplified, provides an adequate framework within which to decide whether, as plaintiffs contend, the estate is entitled to a deduction under Section 661(a)(2) for the amounts paid to the Teagle Foundation. Both parties agree that the amount of the payments, although made to a charitable organization, are not deductible under Section 642(c) in computing the estate's taxable income. Mr. Teagle's will did not provide, as Section 642(c) requires, that

the payments be made out of the estate's gross income. In fact, the payments here were made out of the corpus of the estate.

In addition, the parties seem to agree that none of the provisions of Section 663(a) expressly excludes the payments here from the operation of Section 661. The exception of Section 663(a)(1), for gifts or bequests of a specific sum or of specific property which is paid or credited all at once or in not more than three installments, is not applicable here because the bequest has not been satisfied in three installments or less. Moreover, it is not a bequest of a specific sum of money since its amount, expressed as a percentage of the estate after payment of administrative expenses and other charges, was not ascertainable at the time of Mr. Teagle's death. *See* Treas. Reg. § 1.663(a)–1(b)(1) (1956). Section 663(a)(2), which provides that an estate may not deduct under Section 661 any amount paid, permanently set aside, or otherwise qualifying for the charitable deduction permitted by Section 642(c), would also seem to be inapplicable because the amounts here, as noted above, do not qualify under Section 642(c) for the charitable deduction.[14]

Plaintiffs contend that since none of the express exceptions to Section 661 applies here, the amounts paid to the Teagle Foundation are properly deductible under that section because they constitute "amounts properly paid * * * for such taxable year * * *." The Government contends that "amounts" cannot be read literally and that Section 661(a)(2) does not apply to these charitable distributions. It relies principally on Section 1.663(a)–2 of the Regulations which provides in pertinent part:

> Any amount paid, permanently set aside, or to be used for the charitable, etc., purposes specified in section

---

13. S.Rep.No.1622, 83d Cong., 2d Sess. 354 (1954). *See also* H.R.Rep.No.1337, 83d Cong., 2d Sess. A205 (1954).

14. Section 663(a)(3), which precludes a double distribution deduction where an

amount required to be distributed is accumulated and distributed in a later year, is by its terms inapplicable to this case.

642(c) and which is allowable as a deduction under that section is not allowed as a deduction to an estate or trust under section 661 or treated as an amount distributed for purposes of determining the amounts includible in gross income of beneficiaries under section 662. *Amounts paid, permanently set aside, or to be used for charitable, etc., purposes are deductible by estates or trusts only as provided in section 642(c).* * * * [15]

From our reading of this regulation, two things seem clear. First, the italicized language is dispositive of the issue in this case, since it prevents an estate from claiming as a deduction under Section 661(a) (2) any amounts distributed to a charitable beneficiary except as permitted by Section 642(c). Second, however, there is nothing in Section 663(a) (2), the statutory provision under which this regulation was promulgated, which expressly supports the rule announced in the regulation. Section 663(a) (2) provides only that an estate or trust may not deduct under Section 661 any amounts which are also deductible under Section 642(c); it does not specifically cover situations like the one here, where amounts paid to a charitable organization do not qualify for the charitable deduction.

■ The validity of this regulation must be sustained unless it is "unreasonable and plainly inconsistent with the revenue statutes * * *." Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S. Ct. 695, 698, 92 L.Ed. 831 (1948). *See also, e. g.,* Estate of Bahen v. United States, 305 F.2d 827, 829, 158 Ct.Cl. 141, 145 (1962), and cases cited therein. After carefully considering the parties' contentions in this case, as well as the entire distribution scheme of Subchapter J, we think that the regulation is valid and also that any other rule would be an unreasonable interpretation of the statute.

We do not adopt plaintiff's argument that Section 661(a) (2) must be read according to its literal terms. If an estate were entitled to a distribution deduction for "*any* other amounts properly paid," as that section provides, then all payments made by an estate, whether or not to a beneficiary, would be deductible. For example, contrary to Thomas Lonergan Trust, 6 T.C. 715 (1946), an estate would be allowed a distribution deduction when it makes payments to a creditor in satisfaction of a judgment against the estate. Moreover, under a literal interpretation of Section 661(a) (2), in many instances an estate would be entitled to a double deduction. Thus, expenses which are deductible under Section 212 would be deductible again under Section 661.

■ Obviously, the phrase "any other amounts paid" should not be read as broadly as its literal terms suggest. It must be interpreted in its own particular context, with reference to its relationship with the other provisions of Subchapter J, and in accordance with the consequences which Congress sought to achieve when it enacted Section 661 in 1954.

The most logical reference point in attempting to delineate the scope of Section 661 is the corollary provision of Section 662. That the two sections should be read together is not only implicit from the fact that they are similarly structured and in some instances identically worded, but also explicit from Section 662's express reference to Section 661. Thus, Section 662(a), in imposing its tax on distributees, states that "there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid, credited, or required to be distributed * * * the sum of the following amounts * * *." By this reference, we think it is proper to confine Section 661 to distributions to *beneficiaries* of the estate, even though Section 661(a)

---

15. Treas.Reg. § 1.663(a)–2 (1956). (emphasis added). *See also* Rev.Rul. 68–667, 1968–2 Cum. Bull. 289.

does not specifically so provide.[16] Such a construction, implied in Section 662(a), prevents the absurd results mentioned above which would occur if the phrase "any other amounts properly paid" in Section 661(a) (2) were applied literally.

Of course, an interpretation which limits Section 661 to distributions to beneficiaries does not put an end to the matter here, since the Teagle Foundation is a beneficiary of the estate. Therefore, the Government also asks us to interpret Section 661(a) as permitting a deduction only for distributions to *taxable* beneficiaries, based upon its argument that Section 661 must be read as interdependent with Section 662. That is, as we understand the Government's argument, the incidence of the tax on the income of an estate must be allocated between estate and beneficiary, and to the extent that the beneficiary is exempt from the tax imposed by Section 662, any distributions to that beneficiary would not be deductible by the estate under Section 661.

The Government's position seems to be correct in the context of this case, but we do not hold that it is a general rule which may be applied in every conceivable situation that may arise under the provisions of the Code here considered. We think it is sufficient to say that, under the facts of this case, the Government's position accords with the general intent of Congress in enacting the distribution rules [17] and, as we discuss below, is in accord with what we believe to be an implied Congressional intent to prevent all charitable distributions, whether or not deductible under Section 642(c), from entering into the operation of the distribution rules.

As we noted above, when Congress enacted the present distribution rules its primary purpose was to eliminate the necessity for tracing the source of distributions. Under prior law, in general, beneficiaries were taxed only on amounts of current income distributed by an estate or trust. Such a simple rule led to manipulation,[18] and in 1942 Congress attempted to tighten up the statute by enacting the 65-day rules of Section 162(d) of the 1939 Code. The end result was that the distribution rules became so difficult to apply, and so entrenched in the tracing requirements, that Congress abandoned the old system in favor of the present scheme.[19] Tracing was eliminated by providing in Section 662 that all amounts distributed to beneficiaries would be considered to be distributions of income, subject to the modifications of Section 663 and the quantitative limitation of D. N. I. Consistent with the conduit principle, an estate or trust making such distributions would be entitled to a deduction under Section 661.

As we read Sections 661(a) and 662(a), Congress intended to do nothing more than combine the conduit principle with a conclusive presumption that distributions subject to the opera-

---

16. This construction is confirmed by the legislative history of Section 661. *See* H.R.Rep.No.1337, 83d Cong., 2d Sess. A198 (1954) ; S.Rep.No.1622, 83d Cong., 2d Sess. 347 (1954) ; U.S.Code Cong. & Admin.News, p. 4988 :

"§ *661. Deduction for estates and trusts accumulating income or distributing corpus.*

\* \* \* \* \*

"This section (subject to the limitations discussed below) allows an additional deduction to estates or trusts for amounts paid, credited, or required to be distributed *to beneficiaries.* \* \* \* [Emphasis added]"

17. *See* H.R.Rep.No.1337, 83d Cong., 2d Sess. 60 (1954) ; S.Rep.No.1622, 83d Cong. 2d Sess. 82 (1954), U.S.Code Cong. & Admin.News, p. 4714 :

"The bill adopts the general principle that to the extent of the trust's current income all distributions are deductible by the estate or trust and taxable to the beneficiaries."

18. *See, e. g.*, Commissioner of Internal Revenue v. Dean, 102 F.2d 699 (10th Cir. 1939).

19. *See* Kamin, Surrey, & Warren, The Internal Revenue Code of 1954: Trusts, Estates and Beneficiaries, 54 Colum.L. Rev. 1237, 1246–48 (1954).

tion of those sections are distributions of income. Such a presumption is, we think, inapplicable to charitable distributions. As Section 642(c) provides, a charitable deduction is available only if the source of the distribution is gross income. Tracing of charitable distributions is still required under Section 642(c),[20] and to the extent that a charitable distribution is not paid out of gross income in accordance with the requirements of Section 642(c), then we think that Congress intended that no deduction is allowable.

Without the distinction between charitable and noncharitable distributions, Congress' general intent in enacting the present provisions—to prevent manipulative distributions—would be seriously thwarted. The facts of this case are a good illustration. Both the Teagle Foundation and Jane, the sole income distributee, would be second-tier beneficiaries. If the estate could deduct under Section 661(a) (2) the payments made out of the corpus of the estate in satisfaction of the charitable bequest, then the following will result: the estate will pay no tax on the income which it accumulates, because that income will be offset by deductions for its distributions of corpus to the Teagle Foundation. Later on, the estate can distribute the accumulated income to Jane tax-free. With regard to current payments to Jane, concededly out of estate income, her tax would be greatly reduced. Thus, in 1963, she received $100,000 while the Teagle Foundation received approximately $13,200,000. If both amounts were considered distributions to beneficiaries within the meaning of Section 662, then Jane would be taxable on only 1/133 of the estate's D. N. I. for 1963, up to the amount of her distribution.

Based upon our reading of the distribution sections of Subchapter J and their legislative history, we conclude that Section 1.663(a)–2 of the Regulations, which provides that amounts distributed by an estate or trust to a chari-

table organization are deductible only under Section 642(c), is consistent with the statutory scheme and a reasonable interpretation thereof. It necessarily follows that plaintiffs are not entitled to a deduction pursuant to Section 661(a) (2) for the amounts of corpus distributed in satisfaction of the charitable bequest. Accordingly, defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and the petition is dismissed.

## APPENDIX

Internal Revenue Code of 1954 (26 U. S.C.):

§ 642. *Special rules for credits and deductions.*

\*   \*   \*   \*   \*   \*

(c) *Deduction for amounts paid or permanently set aside for a charitable purpose.*—In the case of an estate or trust (other than a trust meeting the specifications of subpart B) there shall be allowed as a deduction in computing its taxable income (in lieu of the deductions allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit. \*   \*   \*

\*   \*   \*   \*   \*   \*

§ 661. *Deduction for estates and trusts accumulating income or distributing corpus*

(a) *Deduction.*—In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust (other than a trust to which subpart B applies), the sum of—

---

20. Riggs National Bank v. United States, 352 F.2d 812, 173 Ct.Cl. 479 (1965.)

(1) any amount of income for such taxable year required to be distributed currently (including any amount required to be distributed which may be paid out of income or corpus to the extent such amount is paid out of income for such taxable year) ; and

(2) any other amounts properly paid or credited or required to be distributed for such taxable year;

but such deduction shall not exceed the distributable net income of the estate or trust.

\*   \*   \*   \*   \*   \*

§ 662. *Inclusion of amounts in gross income of beneficiaries of estates and trusts accumulating income or distributing corpus.*

(a) *Inclusion.*—Subject to subsection (b), there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid, credited, or required to be distributed (by an estate or trust described in section 661), the sum of the following amounts:

(1) *Amounts required to be distributed currently.*—The amount of income for the taxable year required to be distributed currently to such beneficiary, whether distributed or not. If the amount of income required to be distributed currently to all beneficiaries exceeds the distributable net income (computed without the deduction allowed by section 642(c), relating to deduction for charitable, etc., purposes) of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (as so computed) as the amount of income required to be distributed currently to such beneficiary bears to the amount required to be distributed currently to all beneficiaries. For purposes of this section, the phrase "the amount of income for the taxable year required to be distributed currently" includes any amount required to be

paid out of income or corpus to the extent such amount is paid out of income for such taxable year.

(2) *Other amounts distributed.*—All other amounts properly paid, credited, or required to be distributed to such beneficiary for the taxable year. If the sum of—

(A) the amount of income for the taxable year required to be distributed currently to all beneficiaries, and

(B) all other amounts properly paid, credited, or required to be distributed to all beneficiaries

exceeds the distributable net income of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (reduced by the amounts specified in (A)) as the other amounts properly paid, credited or required to be distributed to the beneficiary bear to the other amounts properly paid, credited, or required to be distributed to all beneficiaries.

\*   \*   \*   \*   \*   \*

§ 663. *Special rules applicable to sections 661 and 662.*

(a) *Exclusions.*—There shall not be included as amounts falling within section 661(a) or 662(a)—

(1) *Gifts, bequests, etc.*—Any amount which, under the terms of the governing instrument, is properly paid or credited as a gift or bequest of a specific sum of money or of specific property and which is paid or credited all at once or in not more than 3 installments. For this purpose an amount which can be paid or credited only from the income of the estate or trust shall not be considered as a gift or bequest of a specific sum of money.

(2) *Charitable, etc., distributions.*—Any amount paid or permanently set aside or otherwise qualifying for the deduction provided in section 642(c) \* \* \*.

\* \* \* \* \* \*

Treasury Regulations on Income Tax (26 C.F.R.):

Sec. 1.663(a)–2. *Charitable, etc., distributions.*

Any amount paid, permanently set aside, or to be used for the charitable, etc., purposes specified in section 642(c) and which is allowable as a deduction under that section is not allowed as a deduction to an estate or trust under section 661 or treated as an amount distributed for purposes of determining the amounts includible in gross income of beneficiaries under section 662. Amounts paid, permanently set aside, or to be used for charitable, etc., purposes are deductible by estates or trusts only as provided in section 642(c). \* \* \*